NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELISA MARTINEZ, | Civil Action No.: 09-5277 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| ANSELMI & DECICCO, INC., | |
| Defendant. | |

**LINARES**, District Judge.

This matters comes before the Court on Defendant Anselmi & Decicco, Inc.'s ("Anselmi") motion for partial dismissal of Plaintiff Elisa Martinez's Amended Complaint. Ms. Martinez's Amended Complaint asserts ten claims against Anselmi for: (1) a violation of New Jersey's Law Against Discrimination ("NJLAD") based on sexual harassment; (2) a violation of NJLAD for hostile work environment based on sexual harassment; (3) a violation of NJLAD based on gender discrimination; (4) a violation of NJLAD based on disability or handicap; (5) a violation of NJLAD based on retaliation; (6) a violation of NJLAD based on failure to rehire; (7) a violation of the Family Medical Leave Act ("FMLA"); (8) breach of contract; (9) breach of the implied covenant of good faith and fair dealing; and (10) breach of implied contract. Anselmi presently moves to dismiss all claims except Ms. Martinez's NJLAD claim based on retaliation and her FMLA claim. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Anselmi's motion is granted in part

and denied in part.

## I.     BACKGROUND

Ms. Martinez began working for Anselmi in August 2006 as a construction laborer. (Compl. ¶ 9.)  Richard Weaver was an Anselmi foreman who had supervisory authority over other Anselmi laborers.  (Id. at ¶ 11.)  From October 2006 to March 2007, Ms. Martinez dated Mr. Weaver.  (Id. at ¶ 13.)  Ms. Martinez alleges that during this period, she "experienced retaliation at work in the form of being put in dangerous working situations."  (Id. at ¶ 15.)  She asserts that she complained about this treatment.  (Id.)  She also alleges that "[d]uring this same time period, numerous males at the construction sites would engage in sexually inappropriate activities and conduct," such as a worker "lift[ing] a tool and gestur[ing] with it near his penis area in a graphically sexual manner," a worker calling her sexually inappropriate words, or a worker grabbing her derriere.  (Id. at ¶¶ 16-17, 19-20.)  She asserts that she complained about this behavior, but that it continued.  (Id. at ¶ 18.)

In March 2007, Ms. Martinez asserts that she learned that Mr. Weaver was married, terminated their relationship, and requested that she be transferred to another job site.  (Id. at ¶¶ 21, 23.)  Anselmi responded to her request by moving her to another job site in April 2007.  (Id. at ¶ 24.)  By the end of April, Ms. Martinez resumed dating Mr. Weaver.  (Id. at ¶ 28.)

Ms. Martinez alleges that in the second week of June 2007, she and Mr. Weaver got into a physical altercation outside of work at the Portuguese Feast in Newark.  (Id. at ¶¶ 29, 35-36.)  She asserts that when she returned to work after this incident, she "was once again put in dangerous working conditions" and "had to endure other acts of sexual harassment," such as being asked by a foreman "if she would do a threesome."  (Id. at ¶¶ 37-38.)  She also alleges that

during the end of June 2007 she was put in a dangerous working situation involving loading

large, heavy pieces of wet oak onto trucks.  (Id. at ¶¶ 39-41.)  She states that she "complained to

[the foreman and another laborer] of the retaliation," but "no curative action was taken."  (Id. at

¶¶ 42-43.)

      Around this same time, Ms. Martinez asserts that she "started to suffer from excruciating

pains" and "had to take off from work to go to the hospital."  (Id. at ¶¶ 44-45.)  Eventually, her

doctors discovered that she had two large ovarian cysts which needed to be surgically removed.

(Id. at ¶¶ 48-49.)  The doctors also informed her that the cysts may be cancerous.  (Id.)  She

informed her supervisor, Mr. Esam, of her condition.  (Id. at ¶ 49.)  She continued to work and

alleges that she was "force[d] . . . to engage in excessive lifting and continued to [be] put . . . in

dangerous working situations."  (Id. at ¶¶ 50-51.)  At the end of July 2007, she alleges that Mr.

Esam told her "that she looked like as if she was in severe pain and suffering" and should go

home.  (Id. at ¶ 52.)  She says she subsequently returned to work, but "continued to suffer severe

pain due to the work that Defendants were mandating she perform."  (Id. at ¶¶ 53-54.)  She

asserts that "[o]n approximately August 5, 2007, [Mr.] Esam informed [her] to go home and

informed her that she could return to work when her medical condition improved."  (Id. at ¶ 56.)

She states that "[Mr.] Esam made clear that [she] could resume her employment when her

medical condition improved."  (Id. at ¶ 58.)

      While she was off work, she asserts that Mr. Weaver told her "that if the company had to

hire minorities, it would hire African Americans over females."  (Id. at ¶ 59.)  She also alleges

that Mr. Weaver told her that a shop steward "told him that this was the company's preference."

(Id. at ¶ 60.)  She also alleges that, during this period while she was not working, on

approximately September 15, 2007, Mr. Weaver physically assaulted her causing her to be admitted to the hospital.  (Id. at ¶ 63.)  As a result of this incident, Ms. Martinez obtained a Final Restraining Order ("FRO") against Mr. Weaver.  (Id. at ¶ 64.)  Ms. Martinez informed her shop steward and Mr. Esam of the FRO and notified them that in the future she and Mr. Weaver could not work at the same location.  (Id. at ¶ 67-68.)  She states that Mr. Esam "made no comment . . . and asked [her] to call them back after her medical condition improved."  (Id. at ¶ 70.)

Ms. Martinez had surgery to remove the cysts on October 3, 2007.  (Id. at ¶ 71.)  Soon thereafter, she "called [Mr.] Esam and advised him that her surgery went extremely well and that she could return to work."  (Id. at ¶ 72.)  She states that Mr. Esam told her to call back later; she alleges that she called back numerous time over the next several months and was told that business was slow and she should call back later.  (Id. at ¶¶ 75-79.)  She was not told she could return to work.

In March of 2008, Ms. Martinez called Anselmi's President, Henry Meyer, and "informed [him] of the details of her work experience," including the alleged "sexual harassment, the assaults by [Mr.] Weaver, the restraining order, the retaliation, her medical condition, her discussions with [Mr. Esam], and her constant attempts to return to work."  (Id. at ¶¶ 80-82.)  In April of 2008, she set up an appointment to meet with Mr. Meyer.  (Id. at ¶ 85.)  During this meeting she asserts that she went through the same things she previously discussed with him on the phone.  (Id. at ¶ 86.)  During that meeting she states that Mr. Meyer told her "business was slow and [she] was terminated."  (Id. at ¶ 93.)  She then asked to speak with Anselmi's owners, who refused to meet with or re-hire her.  (Id. at ¶¶ 95-96.)

Ms. Martinez filed her original Complaint in this matter on August 4, 2009, in New

Jersey state court. She filed an Amended Complaint on September 14, 2009. Anselmi removed the matter to this Court and presently seeks to dismiss part of Ms. Martinez's Amended Complaint.

## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id.   However, a plaintiff is not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.   It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v.

Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  But, "a document

integral to or explicitly relied on in the complaint may be considered without converting the

motion [to dismiss] into one for summary judgment."  In re Burlington Coat Factory Sec. Litig.,

114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted, alteration in original).

## III.   DISCUSSION

### A.   Counts I & II: NJLAD Claims Based on Sexual Harassment

Anslemi does not challenge the merits of Ms. Martinez's sexual harassment based claims

in its present motion.  Instead, it seeks to dismiss these counts as barred by the statute of

limitations.  "The statute of limitations for claims arising under the [NJ]LAD is two years."

Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 621 (N.J. 2002).  But, "[w]hen an

individual is subject to a continual, cumulative pattern of tortious conduct, the statute of

limitations does not begin to run until the wrongful action ceases."  Wilson v. Wal-Mart Stores,

729 A.2d 1006, 1010 (N.J. 1999); see also Shepherd, 803 A.2d at 624 ("[P]laintiffs' cause of

action accrued on the date of the last act in the pattern or series of acts that comprise the

continuing violation claim.").  Generally, hostile work environment claims are analyzed under

the continuing violation exception to the NJLAD's two-year statute of limitations.  See, e.g.,

Wilson, 729 A.2d at 1011; cf. AMTRAK v. Morgan, 536 U.S. 101, 122 (2002) (distinguishing

between discrete acts, such as termination or failure to promote, and hostile work environment

claims in assessing timeliness of Title VII discrimination claims).

Anselmi argues that the last possible day that a violation could have occurred was the last

day Ms. Martinez was on a job site.  Ms. Martinez argues that her claims arose when she was

terminated by Mr. Meyer in April 2008.  Ms. Martinez has not plead any facts that could be

construed as sexual harassment occurring after she left the job site due to her medical condition.

Both parties assert that Toto v. Princeton Township supports their position. See 962 A.2d

1150 (N.J. Super. Ct. App. Div. 2009). The court in Toto held:

> Where a continuing violation is involved in a hostile work environment claim, the cause of action accrues on the date of the last act. As a result, the last day on which plaintiff's cause of action accrued was the day he left the workplace, . . . the date on which the last act of harassment could have occurred. The statute of limitations began to run from that point.

Id., at 1155 (citation omitted). Based on Toto and the other New Jersey law cited above, this

Court finds that the appropriate accrual date for a claim based on a hostile work environment or

based on continuing sexual harassment on the job is the last day that the a plaintiff was in the

work environment unless the facts are clear that the wrongful action ceased before that date.

Anselmi argues that Ms. Martinez was last at work on July 30, 2007, citing to certified

payroll records submitted with its motion. Ms. Martinez disputes the authenticity of these

documents and argues that, because they were not included with or refer to in her Amended

Complaint, they should not be considered for purposes of this motion to dismiss. She also

disputes their authenticity. Ms. Martinez's Amended Complaint asserts that her last day of work

was "[o]n approximately August 5, 2007." This date is exactly two years prior to the filing of her

original Complaint. Thus, if Ms. Martinez was last at work on July 30, her sexual harassment

based claims are time-barred; if she was at work on August 5, they are not.

For purposes of this motion to dismiss, the Court must accept the facts as plead in the

Amended Complaint as true. The Court finds that the payroll records were not referenced in Ms.

Martinez's Amended Complaint nor are they integral to her claims. Additionally, she contests

their authenticity. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192,

1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Therefore, although at summary judgment such documents may be conclusive of Anselmi's argument that Counts I and II are barred by the statute of limitations, at this stage, the Court will not consider the payroll records. The Court finds that Ms. Martinez's claims in Count I and II are not barred by the statute of limitations based on the facts as plead in her Amended Complaint. The Court denies Anselmi's motion with regard to these Counts.

**B.      Counts III & IV: NJLAD Claim Based on Gender Discrimination & Disability or Handicap**

Anselmi seeks to dismiss Ms. Martinez's NJLAD gender and disability or handicap discrimination claims both because they are barred by the statute of limitations and because they fail to state a claim. With respect to her gender discrimination claim, although Ms. Martinez's Amended Complaint generally incorporates all prior paragraphs into this Count, the Count specifically asserts that "[o]ther male employees engaged in misconduct and were not subjected to disciplinary actions utilized towards Plaintiff." (Compl. ¶ 112.) She next states that "upon information and belief, Defendants have engaged in individual and a pattern and practice of such discrimination and/or disparate treatment." (Id. at ¶ 113.) Beyond these statements, she provides no other guidance as to the basis of her gender discriminations claims.

In general, she appears to believe that if she alleges a lot of facts as general factual allegations any claim assert will be considered well-plead. This Court disagrees. Although she does allege many facts, they all do not support each type of NJLAD claim asserted; she brings six different NJLAD claims. See Bolinger v. Bell Atlantic, 749 A.2d 857, 861 (N.J. Super. Ct. App.

Div. 2000) (noting that in determining the period of violations, the alleged wrongful acts must be of the same type).  Additionally, the requirements for an NJLAD claim may differ slightly depending on the adverse action alleged.  For example, claiming that she was disciplined because of her gender versus claiming that she was not re-hired because of her gender may require slightly different allegations to be plead.  Her pleading must identify the basis for each claim.  It is insufficient to merely refer to ninety paragraphs of general factual allegations, leaving Anselmi and this Court to guess how these facts relate to the ten different causes of action she asserts.

Although her gender discrimination claim alleges that it is based upon disciplinary actions, this Court is unable to determine which actions or even types of actions she is referring to; her Amended Complaint does not allege any official disciplinary actions.  In Anselmi's brief, it guesses what adverse actions she may be alleging were a result of gender discrimination.  This is precisely what the pleading rules are designed to prevent.  In fact, without a clearer understanding of the basis of her gender discrimination claim, this Court is unable even to analyze Anselmi's statute of limitations argument.  If her claim is based on some disciplinary action while she was on the job site, it may be considered a discrete act versus a continuing condition, and, thus, likely occurred over two years before the filing of her original Complaint.  Such a claim would be time barred.  On the other hand, if she is claiming that she was terminated in April 2008 or that her failure to be rehired in April 2008 was because of her gender, then it would not be.  In the latter case, her claim may still fail unless she makes appropriate allegations to state a plausible gender discrimination termination or failure to re-hire claim.  For these reasons, the Court finds that she has inadequately plead her gender discrimination claim.

The Court reaches the same conclusion with respect to her disability or handicap claim.

Anselmi, in its moving brief, assumes for purposes of this motion that suffering from ovarian cysts is a disability or handicap, and so this Court does not address that issue.  Like her gender discrimination claim, her Amended Complaint incorporates the prior paragraphs into her disability or handicap NJLAD claim.  Her claim specific allegations add only that Anselmi "discriminat[ed] against Plaintiff due to Plaintiff's handicap and/or disability."  (Compl. ¶ 117.) This is nothing more than a broad conclusory allegation.

This Court finds Ms. Martinez's pleading with respect to this claim even more opaque than her gender discrimination claim.  With the exception of her allegations related to heavy lifting or dangerous conditions, she asserts that, in response to the pain she was experiencing because of her condition, she was told she could leave work and could return after her medical condition improved.  Additionally, after her surgery, she appears to no longer have had any medical impairment.  Thus, it is unclear if or how she is alleging that she was discriminated against because of a disability.  Also, like her gender discrimination claim, based on Ms. Martinez's bare pleadings, the Court is unable even to determine if this claim was timely filed. Therefore, the Court finds that both Counts III and IV fail to state a claim; they are dismissed without prejudice.

### C.    Count VI: NJLAD Claim Based on Failure to Rehire

Under the NJLAD, "[t]o prove a prima facie case of discrimination, [a] plaintiff must demonstrate that he or she (1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and (4) the employer sought to, or did fill the position with a similarly-qualified person."  Gerety v. Atl. City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005).  Ms. Martinez's Amended

Complaint provides no information to demonstrate that she has a plausible failure to re-hire claim.  Although she is not required to plead every element of a prima facie case, she must make some non-conclusory allegations that will put Anselmi on notice of the claim against it.  Here, she simply alleges: "The foregoing facts and circumstances [alleged in the general factual allegations] demonstrate that Defendants have violated the [NJLAD] by failure to re-hire Plaintiff."  (Compl. ¶ 125.)  This gives Anselmi no notice of the essence of her claim.  Also, based on the facts plead, it appears that she is claiming that she was not re-hired in retaliation of her complaints or because of her gender or because of an alleged disability.  As such, this claim is duplicative of her other NJLAD claims and can be included with them in any amended pleading if not currently included.  Therefore, this Count will be dismissed with prejudice.

**D.      Counts VIII, IX, and X: Breach of Contract Claims**

Anselmi argues that all of Ms. Martinez's breach of contract claims should be dismissed as preempted by the Labor Management Relations Act ("LMRA") since her employment was covered by a collective bargaining agreement.  It also argues that these claims should be dismissed because they are duplicative of her NJLAD claims.

1.      <u>Breach of Express Contract & Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

With respect to her breach of express contract and breach of the implied covenant of good faith and fair dealing claims, Counts VIII and IX, Ms. Martinez alleges: "Defendants had contractual obligations to plaintiff that were set forth in their agreements such as the handbook, union contracts, and/or other employment documents."  (Compl. ¶ 133 (breach of express contract); <u>see also</u> <u>id.</u> ¶ 138 (breach of implied covenant of good faith and fair dealing).)

Anselmi argues that all of Ms. Martinez's breach of contract claims are preempted by LMRA §

301.  In support of its position, Anselmi attaches to its motion a copy of the collective bargaining

agreement ("CBA") which covered Ms. Martinez's employment.  Ms. Martinez's Amended

Complaint specifically refers to her union contract in her breach of express contract claim.  (See

id., at ¶ 133.)  Therefore, this Court may appropriately consider the CBA for purposes of this

motion to dismiss.

> Section 301 of the LMRA states:
>
> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce . . . may be brought in any
> district court of the United States having jurisdiction of the parties without respect
> to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Pursuant to LMRA § 301, federal courts have the exclusive jurisdiction to

enforce labor contracts.  See 29 U.S.C. § 185; Patterson v. ExxonMobil Corp., 262 F. Supp. 2d

453, 457 (D.N.J. 2003).  Thus, if a plaintiff seeks relief under state law for a violation of a

collective bargaining agreement or if the interpretation of such an agreement is necessary in order

for the court to resolve the plaintiff's state law claim, the claim is preempted by LMRA § 301.

See, e.g., Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988).

Here, for her breach of express contract and breach of the implied covenant of good faith

and fair dealing claims, Ms. Martinez's Amended Complaint provides only the broad allegation

identified above.  She clearly refers to the union contract, but she also refers to other documents.

Based on this bare pleading, the Court is unable to determine the basis for these claims and

whether she is seeking relief for a violation of the CBA or if her claim requires interpretation of

the CBA.  In her opposition brief she argues that she had an individual employment contract with

Anselmi separate from the CBA.  Even if such a statement alone would be adequate to state a claim that was not pre-empted, she may not amend her complaint through statements made in her opposition brief, see Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); this allegation was not made in her Amended Complaint.

Additionally, under New Jersey law, "supplementary common law causes of action [are not permitted] when a statutory remedy under the [NJ]LAD exists." Catalane v. Gilian Instrument Corp., 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994).  Thus, where the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred.  See DeCapua v. Bell Atlantic-N.J., Inc., 712 A.2d 725, 734 (N.J. Super. Ct. Law. Div. 1998).  Although not plead, her opposition brief alludes to discrimination policies in employment materials.  "[C]ourts have held that a breach of contract claim that seeks damages for discriminatory acts on the basis of a statement in a policy manual is preempted by the NJLAD." Finn v. J.B. Hunt Transp. Servs., No. 07-4851, 2009 WL 2058850, at *6 (D.N.J. July 7, 2009) (citing DeCapua, 712 A.2d at 734; Santiago v. City of Vineland, 107 F. Supp. 2d 512, 567 (D.N.J. 2000); Dimare v. Metlife Ins. Co., No. 07-4268, 2008 WL 2276007, at *3 (D.N.J. June 2, 2008)).  Ms. Martinez cites to Mosley v. Bay Ship Management, Inc., which reached the opposite conclusion.  See 174 F. Supp. 2d 192, 201 (D.N.J. 2000).  This Court is persuaded by the reasoning in the majority of cases that have found that such claims are barred as duplicative of the NJLAD.

Thus, to the extent her breach of express contract or breach of the covenant and good faith and fair dealing claims are based on the CBA, they are preempted by the LMRA.  To the extent they are based on policies against discrimination in other employment documents they are

preempted by the NJLAD.  However, because the basis for these claims is not clear, the Court

will dismiss these counts without prejudice.

       2.    <u>Breach of Implied Contract</u>

With respect to her breach of implied contract claim, Count X, she alleges: "Defendants

made numerous oral representations such as representations surrounding the future of her

employment."  (Compl. ¶ 143.)  This claim is more explicit and clearly relates to the discussions

with Mr. Esam, not the CBA, wherein she alleges that he told her she would be permitted to

return to work when her medical condition improved.  The Court also finds that the factual

predicate for this claim is not the same as for her NJLAD discrimination claims.  Thus, this Court

finds that this claim is not preempted by either the LMRA or the NJLAD.  Anselmi presently

does not attack this claim at this stage on any other basis.  Anselmi's motion to dismiss Count X

is denied.

## IV.    CONCLUSION

For the foregoing reasons, Anselmi's motion to dismiss is granted in part and denied in

part.  It is granted with respect to Counts III (NJLAD based on gender discrimination), IV

(NJLAD based on disability or handicap), VI (NJLAD based on failure to rehire), VIII (breach of

contract), and IX (breach of implied covenant of good faith and fair dealing).  Counts III, IV,

VIII, and IX are dismissed without prejudice to Ms. Martinez to amend her Amended Complaint

to correct any deficiencies.  Count VI is dismissed with prejudice.  Anselmi's motion is denied

with respect to Counts I, II, and X.  An appropriate Order accompanies this Opinion.


DATED: December 22, 2009       /s/ Jose L. Linares
                      JOSE L. LINARES
                      UNITED STATES DISTRICT JUDGE